**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

J.D. and L.D., on behalf of J.D.,

        Plaintiffs,

   - against -        **COMPLAINT**

New York City Department of Education,   **08 CV 3174 (MGC)**

        Defendant.

----------------------------------------------------------------

  Plaintiffs J.D. and L.D., on behalf of J.D., by their attorneys, Mayerson & Associates, as and for their Complaint, allege and state the following:

  1. Plaintiff J.D., the daughter of plaintiffs J.D. and L.D., is a minor child who has been diagnosed with a serious autism spectrum disorder.  J.D. was, at all relevant times, a student residing within the New York City School District entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400, *et. seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

  2. Plaintiffs J.D. and L.D. are the parents of J.D.  Plaintiffs are residents of the State of New York, residing at all relevant times at an address, in Manhattan, within this District.

  3. J.D. and her parents J.D. and L.D. are not expressly named herein by their given names or specific address because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

4.   Defendant New York City Department of Education ("NYCDOE"), upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the agency charged with the obligations to provide J.D. with a free and appropriate public education ("FAPE"), *see infra*, ¶ 8.

### THE RELIEF BEING SOUGHT

5.   This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the IDEIA and, in particular, 20 U.S.C. §§ 1415(i)(2) and (3).  *See also*, 34 C.F.R. §§ 300.516 and 300.517.

6.   This action is being brought to secure statutory attorneys' fees that plaintiffs are entitled to recover pursuant to the fee-shifting provisions of the federal IDEIA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G).  J.D. and L.D., on behalf of J.D., should be awarded attorneys' fees as the "substantially prevailing party" in a due process hearing for the 2004-2005, 2005-2006 and 2006-2007 school years under New York City Impartial Hearing Office Case Numbers 59148 (2004-2005 and 2005-2006) and 100154 (2006-2007).

### JURISDICTION AND VENUE

7.   This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in controversy.  Venue is proper in that plaintiff and defendant both reside in or are situated in this District.

8.   Pursuant to the IDEIA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a

disability.  The FAPE required under IDEIA will be different for each child, as IDEIA does not permit a "one size fits all" approach.

### FACTUAL BACKGROUND FOR THE 2004-2005 & 2005-2006 SCHOOL YEARS

9.   On or about May 4, 2005, J.D. and L.D., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2004-2005 and 2005-2006 school years for the cost and expenses of J.D.'s tuition and related services.  J.D.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized for J.D.'s unique special education needs.

10. The evidentiary hearings on this matter took place on June 22 and July 7, of 2005.  Gary S. Mayerson, Esq., of Mayerson & Associates represented the plaintiffs.  The NYCDOE conceded  Prongs I and III of the Burlington/Carter test for relief.[1]  However, the NYCDOE challenged the appropriateness of J.D.'s program and related services.

11. Plaintiffs entered 44 exhibits and the testimony of five witnesses into evidence in support of their case.  The NYCDOE offered the testimony of two witnesses and 17 documents challenging the appropriateness of the program privately arranged by J.D.'s parents.

12. By "Findings of Fact and Decision" dated August 3, 2005, Impartial Hearing Officer Linda Agoston, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in the 2004-2005 and 2005-2006 administrative due process

---

[1] Reference is made to School Committee of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 105 S.Ct. 1996 (1985), and Florence Court School Dist. Four v. Carter, 510 U.S. 7, 114 S.Ct. 361 (1993), which set the standards for determining whether a handicapped child's unilateral educational placement is eligible for reimbursement relief.

proceeding.[2]  Defendant never appealed from this decision, which thus became final and non-appealable on or about September 8, 2005.

**FACTUAL BACKGROUND FOR THE 2006-2007 SCHOOL YEAR**

13. On or about July 21, 2006, J.D. and L.D., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2006-2007 school year for the cost and expenses of J.D.'s program and services.  J.D.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized for J.D.'s unique special education needs.

14. The evidentiary hearings on this matter took place on September 5, and November 30, of 2006, and January 22, 2007.  Gary S. Mayerson, Esq. of Mayerson & Associates represented the plaintiffs.  The NYCDOE disputed Prong I by contending that it had provided J.D. with a free and appropriate educational program.

15. Plaintiffs entered 31 exhibits and the testimony of six witnesses into evidence in support of their case.  The NYCDOE offered the testimony of one witness and 17 documents supporting its position and challenging the appropriateness of the program privately arranged by J.D.'s parents.

16. By "Findings of Fact and Decision" dated February 5, 2007, Impartial Hearing Officer Debra Siedman DeWan, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.[3]  Defendant never appealed from this underlying administrative decision, which thus became final and non-appealable on or about March 10, 2007.

---

[2] A redacted copy of this decision is annexed hereto as Exhibit A.  Please note that all exhibits have been redacted so as to protect the privacy of the family.  See ¶ 3.
[3] A redacted copy of the decision has been annexed hereto as Exhibit B.

**CONCLUSION**

17. The defendant is liable to pay plaintiffs their reasonable attorneys' fees arising out of J.D.'s successive IDEIA administrative due process proceedings, and in this action, at plaintiffs' counsel's current "prevailing" rates.  The fees requested herein are entirely reasonable and appropriate because:

(a) upon information and belief, plaintiffs' attorneys' office is the only firm in the country whose practice is devoted almost exclusively to representing children and adolescents with autism spectrum disorders, like J.D., in educational rights disputes;

(b) the principal of plaintiffs' attorneys' firm has testified before the United States Congress on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(c) plaintiffs' attorneys have published and presented on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(d) plaintiffs' attorneys have special knowledge and expertise concerning the educational needs of children diagnosed with autism spectrum disorders;

(e) plaintiffs' attorneys' office has represented children with autism spectrum disorders in numerous states across the nation, and has consulted to families outside of the United States; and

(f)  to the extent that there is a "prevailing rate" in the Southern District of New York for sophisticated autism intervention cases, plaintiffs' attorneys' prevailing rates are reasonable and within the applicable standard.

18. Necessary duties involved with preparing J.D.'s cases for administrative due process hearings for the 2004-2005, 2005-2006, and 2006-2007 school years included, but were not

limited to: (a) corresponding with plaintiff and J.D.'s service providers; (b) holding numerous telephone conferences; (c) writing and filing impartial due process hearing requests; (d) reviewing and disclosing documentary information relevant to J.D.'s claims; (e) scheduling and preparing witnesses to testify at the hearings; (f) developing effective case presentations for the 2004-2005, 2005-2006 and 2006-2007 school years; and (g) preparing closing statements.

19. Additional fees and costs have been incurred, and will continue to be incurred in this action.

20. For all of the above efforts, plaintiffs should be awarded attorneys' fees, related costs and disbursements for the 2004-2005, 2005-2006 and 2006-2007 school years in an amount to be set by this Court, at plaintiffs' counsel's current prevailing rates.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, this Court should (a) fix and award plaintiffs their statutory attorneys' fees and related costs and disbursements from the IDEIA due process proceedings for the 2004-2005, 2005-2006 and 2006-2007 school years in an amount to be set by the Court, at plaintiffs' counsel's current prevailing rates, (b) award plaintiffs the attorneys' fees and related costs and disbursements associated with this action in an amount to be set by the Court, and (c) award plaintiffs such other, different and further relief as this Court deems proper.

Dated: March 31, 2008
    New York, New York

Gary S. Mayerson (GSM 8413)
Mayerson & Associates
330 West 38th Street, Suite 600
New York, New York 10018
(212) 265-7200
(212) 265-1735 (facsimile)
admin@mayerslaw.com

## FINDINGS OF FACT AND DECISION

Case Number:                        59148

NYS Case Identifier Number:   14541

Student's Name:                     J████ D████████

Date of Birth:                      May 16, 2001

District:                           3

Region:                             10

Hearing Requested By:               Parents

Dates of Hearing:                   June 22, 2005
                                    July 7, 2005

Hearing Officer:                    Linda Agoston, Esq.

## NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 22, 2005

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| L███ D████ | Mother | |
| J███ D████ | Father | |
| Nicole Raab | Speech/Language Pathologist | Parent |
| Lisa Frenette | Behavior Consultant | Parent |
| Craig B. Warn | Social Worker, Behavioral Therapist | Parent |
| Bethany Mattone, Esq. | Attorney | Department of Education |
| Sybil Ewing | CPSE Administrator for Region 10, Chairperson Designee for Marilyn Sprecher | Department of Education |
| Gary Blackhall | Teacher | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED ON JULY 7, 2005

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| L███ D████ | Mother | |
| J███ D████ | Father | |
| Nicole Raab | Speech/Language Pathologist | Parent |
| Lisa Frenette, via telephone | ABA Consultant | Parent |
| Marilyn Sprecher | Chairperson Designee, CSE, District 3 | Dept. of Education |

Case No. 59148

The matter of J██ D. came on for hearing before me on 6/22/05, the date of my designation as impartial hearing officer, pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415(f)(3). The hearing was convened at the request of the parents through their attorney that was received on 5/4/05. I was appointed to hear this case on 5/18/05, after the original hearing officer was not available as she had a conflict with the district. On 5/18/05, I scheduled this case to be heard on 6/22/05. The hearing commence on held on 6/22/05 and concluded on 7/7/05. On 7/7/05, I rendered an interim order ensuring that J██ receive 15 hours of special education itinerant teacher (SEIT) and the related services throughout the pendency of the hearing pursuant to the 3/10/05 Individualized Education Program (IEP). (Tr. at 153) The compliance date was extended as a result of the request for additional hearing dates. Appended to the record are lists of persons in attendance and of documents submitted into evidence.

The hearing was requested by the parents to challenge the program and recommendation of the Committee on Preschool Special Education (CPSE), and to obtain funding for the special education program and services they have provided for J██. The parents brought the hearing seeking reimbursement for the 2004-2005, the summer of 2005 and compensation for the 2005-2006 school year.

BACKGROUND

J██ is 4 years old and is classified as Pervasive Developmental Disorder, Not Otherwise Specified (PDD-NOS), which is a disorder on the autism spectrum. When she was 18 months old, she was diagnosed with PDD-NOS by Manhattan Early Learning Center where early intervention services were recommended. In 12/04, Dr. John Wells, a pediatric neurologist, noted language difficulties, pragmatics, social reciprocity and poor balance and coordination skills. From age 2 to 3 for the 2003-2004 school year, J██ received early intervention services at Manhattan School of Early Learning for 2.5 hours per day 5 days per week and 20 hours of at-home SEIT for Applied Behavioral Analysis (ABA) services, and related services of home based individual occupational therapy (OT) for 1 sessions per week for 60 minutes; home based individual physical therapy (PT) for 1 session per week for 60 minutes and home based individual speech and language therapy

Case No. 59148

for 5 sessions per week for 60 minutes per session. (Tr. at 35) On 1/7/04, ▮ aged out of early intervention and fell into the jurisdiction of CPSE. On 1/7/04, CPSE met to develop an IEP for the 2004-2005 school year and recommended a self-contained class for autistic children. (Tr. at 24) CPSE met again on 6/7/04 for the 2004-2005 school year and classified ▮ as a preschool student with a disability and recommended that she be placed in a center-based 12-month program, 5 hours per day, 5 days a week for the 2004-2005 school year.  The recommended site was Association for the Health of Retarded Children's (AHRC) Central Park Early Learning Center.  The 6/7/04 IEP recommended that ▮ continue to receive SEIT services of at-home ABA for 5 hours per week provided by QSAC.  CPSE further recommended received related services of OT at school twice a week for 30 minutes per session in a group no larger than 3; individual speech and language therapy at home 3 times a week for 45 minutes per session; individual speech and language therapy at school 3 times a week for 30 minutes; individual PT at school twice per week for 30 minutes per session and individual PT at home twice per week for 30 minutes per session

▮ attended Central Park Early Learning Center from September 2004 to June 2005 where she was placed in a special ABA class with a staffing ratio of 10:1:2 or 10 students and 1 teacher and 2 assistant teachers (Exh. GG) Her teacher at Central Park Early Learning Center, Mr. Gregory Blackhall, recommended that ▮ be placed in a less restrictive environment on March 1, 2005 because he noted that ▮ developed an "intrinsic want and need to play and interact with both peers and adults." (Exh. GG at 2) Mr. Blackhall recommended that ▮ be placed in a setting with typically developing children so that she has the opportunity for peer and language models.  He further recommended that she receive consistent instruction over weekends and holidays and a 12-month program. (Id.)

On 3/10/05, CPSE developed an IEP without considering her teacher, Mr. Blackwell's teacher observation on 3/1/05 because the 3/10/05 IEP recommended that ▮ remain in Central Park Early Learning Center in a special class with a staffing ratio of 10:1:2 for the 2005-2006 school year. The 3/10/05 IEP further recommended 15 hours

Case No. 59148

per week of SEIT services and related services of occupational therapy in a separate location twice a week for 30 minutes per session in a group no larger than 3; individual speech and language therapy in a separate location 3 times a week for 30 minutes per session; individual speech and language therapy in a separate location 3 times a week for 45 minutes; and individual physical therapy twice per week for 30 minutes per session

At the 3/10/05 IEP meeting, the parents stated that the SEIT services were not fulfilled; however, they requested 10 additional hours of the SEIT services and extended year services (EYS) or a 12-month program. At the 3/10/05 IEP meeting, the parents informed CSE that J██s needs were not met at Central Park Early Learning Center because she did not require a self-contained class and was more appropriately placed in a less restrictive environment. (Tr. at 25) On 3/24/05, the parents wrote to the CPSE chair to accept the related services that were offered on the 3/10/05 IEP and notified CPSE that they intended to remove J██ from Central Park Early Learning Center for a less restrictive environment. (Exh. R)

On 5/4/05, the parents requested this due process hearing and challenged the 3/10/05 IEP on procedural and substantive grounds. It was uncontested that the 3/10/05 IEP was procedurally defective as there was no regular education teacher. It was uncontested that the 3/10/05 IEP was substantively defective as there was no projected start date, nor a definition of the duration of services or the projected review date. It was uncontested that the 3/10/05 IEP was substantively defective as the IEP failed to assess J██s present levels of performance. It was uncontested that the IEP team failed to conduct a functional behavioral assessment (FBA) to determine the intervention required for instruction and it was uncontested that Behavioral Intervention Plan (BIP) on the 3/10/05 should have been completed. It was uncontested that goals of the 3/10/05 IEP were not objective and not measurable and too easily obtainable. (Exh. T) As a result of J██s deterioration the parents have created an at-home program consisting of ABA therapy and speech therapy and have found a mainstream setting where she would be more appropriately placed with support in the class and at home. (Tr. at 27)

Case No. 59148

The parents reported that CPSE never increased the SEIT services from 5 hours to 15 hours and on 5/12/05, the at-home SEIT ABA teacher stopped providing services. The parents further reported that J▇ did not receive the mandated PT for 60 minutes per week from September 2004 until April 2005. (Tr. at 37)

THE POSITION OF THE PARTIES

The Department of Education has recommended that J▇ be placed in a more appropriate placement than Central Park Early Learning Center and concedes Prong 1 and Prong 3 of the Burlington/Carter reimbursement test. (Tr. at 90; 93) The parents request reimbursement for their at-home ABA services and related services as follows: (1) the at-home ABA therapy from Incidental Behavioral Intervention, (IBI) Associates including Lisa Frenette, Director of IBI, and other therapist from IBI from 3/20/05 to 5/31/05 in the amount of $4845 and parents submitted invoices and checks totaling $4845. (Exh. RR) The parents request reimbursement or prospective payment from 7/5/05 through 6/30/06 for the ABA therapy from IBI Associates for 27.5 hours per week at $120.00 per hour to support J▇ at home and 22.5 hours of SEIT services to support J▇ at school at $120.00 per hour. (Tr. at 190; Exh. LL at 2) The parents requested reimbursement or prospective payment from 7/5/05 through 6/30/06 for the following related services: 5 hours of speech and therapy per week provided by Nicole Raab, a Department of Education approved speech therapist; 3 sessions of OT for 45 minutes per session per week from a Department of Education approved provider for 7/5/05 through 6/30/06 and 2 sessions of PT for 45 minutes per session per week from a Department of Education approved provider for 7/5/05 through 6/30/06. (Exh. LL at 2)   The parents further requested reimbursement or prospective payment for 5 hours per week of ABA supervision, parent training and clinic team meetings from 9/7/05 through 6/30/06 at $150.00 per hour. (Tr. at 191; Exh. LL)   The parents requested reimbursement for a mainstream camp from 7/05 through 8/31/05 at First Friends Pre-School in the amount for $1642.75 and submitted a check in the amount of $1642.75 (Exh. PP) The parents requested reimbursement for the St. Stephen of Hungary School, the school they intend to place J▇ for the 2005-2006 school year in the amount of $5225 (Exh. QQ) and the parents submitted a check for the the St. Stephen of Hungary School in the

Case No. 59148

amount of $5225. (Exh. QQ at 2) Further, the parents submitted the tuition agreement contract for St. Stephen of Hungary School. (Exh. QQ at 1)

THE PARENTS' CASE

Mr. and Ms. D., Lisa Frenette, J████s at-home ABA therapist, Nicole Raab, J████s speech and language therapist, and David Salsberg, clinical neuropsychologist testified in support of the parents' claim for reimbursement for their unilateral program of at-home ABA from 3/05 through 7/5/05 and prospective payment for IBI from 7/5/05 through 6/30/06, tuition reimbursement for the summer of 2005 at First Friends Pre-school and tuition reimbursement for the 2005-2006 school year at St. Stephen of Hungary School. The parents argued that the district has failed to offer J████ a free and appropriate public education (FAPE) on both procedural and substantial grounds and that the parents have unilaterally created their own appropriate special education program for J████

Lisa Frenette, Director of IBI, testified that she worked for 14 years with autistic children conducting ABA and has accepted contracts as a behavioral consultant. (Tr. at 94) She stated that she is a certified behavioral analysis. She explained the autistic spectrum disorder manifests in language issues, a lack of socialization, cognitive delay and sensory issues. (Tr. at 95) She further explained that autistic children need everything broken down into small components; (Tr. at 96) however, some children can be mainstreamed. (Tr. at 98) She stated that if a child has reciprocity of socialization and has some good cognitive ability and retains and generalizes information, then the child is a good candidate to be mainstreamed. (Id.) She explained that there must be 40 hours of ABA therapy at home per week to allow mainstreaming and to provide a seamless intervention from both the home setting and the school setting. (Tr. at 103, 109) She explained that the ABA therapy at home must include parent training so the parents understand the goals of the ABA therapy. (Tr. at 110) She explained that there are team meetings once a month in addition to the weekly parent training to provide the consistency and seamless intervention. (Tr. at 111) She noted that she communicates with the speech and language therapist so every therapist is aware of the behavior of the child during the team meetings. (Tr. at 112)    She further noted that the supervisor must spend a minimum of 4 hours per week to baseline skills and trouble shoot

Case No. 59148

behavioral problems. (Tr. at 115) She recommended a full-time SEIT trained in ABA therapy to shadow the child in the mainstream environment. (Tr. at 117) She explained that the ABA shadow is needed to facilitate socialization and language and to assist in peer modeling in the mainstream classroom. (Tr. at 118)

Ms. Frenette explained that a member of her staff at IBI serves as the SEIT; however, she supervises the program. She described the IBI staff and noted the therapist have 12 years of experience working with autistic children. (Tr. at 119) She explained that ABA therapy utilizes "errorless teaching" that will not allow the child to error. She explained ABA therapy should provide a prompt ahead of the demand so the child will not make an error in the response. (Tr. at 121) She further explained how "errorless teaching" enables the child to generalize the skills so that the prompt can be faded out and the child is independent of the prompt and later independent of the SEIT. (Tr. at 122) She recalled there must be constant communication with the school to ensure the consistency and to ensure that the teaching at home is reinforced by the school. (Tr. at 123) She noted that a child requires intensive ABA at home and at school to be placed in a mainstream environment. (Tr. at 125)

Ms. Frenette recalled that she evaluated J██ on 1/5/05 (Exh. EE at 3) and noted that the at-home therapist, Jill, who had worked with J██ for the past 2 years did not use ABA therapy and that J██ did not respond to Jill. She related that Jill did not have "instructional control" with J██. She related that J██ did not respond to Jill's instructions nor responded to Jill calling her name. She noted that Jill did not understand ABA and did not use "errorless teaching" nor could prevent J██ from engaging in echolalia. (Exh. EE at 6; Tr. at 129)

Ms. Frenette stated that she agreed with J██s teacher, Mr. Blackhall, at Central Park School and recommended that J██ be placed in a mainstream setting. (Tr. at 136) She noted that in J██ should not be placed in a self-contained class for the summer of 2005 because in a self-contained class there are no social models, no reciprocity. (Tr. at 137) She recommended that J██ requires an ABA therapist to shadow her in a mainstreamed camp for the summer of 2005 and that the shadowing should continue in

Case No. 59148

the mainstreamed school for 2005-2006. (Tr. at 138) She explained that the ABA shadow would support ▮ in developing and maintaining good behavioral skills. (Id.) She stated that ▮ requires the services of a full-time SEIT from IBI at her mainstream setting at the St. Stephen of Hungary School for the 2005-2006 school year. (Tr. at 166) She stated that she scheduled a weekly visit to supervise the SEIT and ▮ at school. Ms. Frenette related that she observed ▮ in the mainstream camp at First Friends Pre-School on 7/6/05 and that ▮ was motivated to model from peers with the facilitation from the SEIT from IBI. (Tr. at 167) She opined that ▮ was appropriately placed at First Friends Pre-School.

On cross Ms. Frenette described that the camp at First Friends and noted that there was no difference between the camp and a regular preschool program. She noted that she worked with the director who had 30 years experience for preschool. (Tr. at 168)

Nicole Raab, ▮ s speech therapist, testified that had taught speech and language therapy for 6 years and that she worked with ▮ 3 times a week for 45 minutes per session. (Tr. at 158) Ms. Raab stated that she worked with ▮ in early intervention and had been her at-home speech and language therapist since 9/04. She recommended that ▮ receive speech and language therapy 5 times per week for 60 minutes per session. (Tr. at 159) She noted that the extra 15 minutes per session would provide the parent consultation time. (Tr. at 160) She stated that 5 hours per week of speech and language therapy would support ▮ in a mainstream setting. (Tr. at 161) She noted that ▮ progressed in her speech in that her tantruming decreased and she can now comment on her surroundings. (Tr. at 161) She related that ▮ s phrase length, frequency of work use, and her vocabulary increased. She recommended that ▮ could meaningfully succeed in a mainstream setting with 5 hours of speech and language per week instead of 3 sessions of 45 minute per session per week. (Tr. at 163)

David Salsberg testified that the parents contacted him to provide an updated psycho-educational evaluation. (Tr. at 170) He stated that he observed ▮ in 1/7/05 and 2/05 and noted that ▮ scored in the average range (96) on the IQ test. He stated that ▮ had average cognitive abilities had good potential. (Tr. at 172; Exh. F) He opined

Case No. 59148

that J███ was a meaningful candidate for mainstreaming if she receives a lot of support. (Tr. at 173) He stated that he provided an addendum to his report with a fax date of 6/17/05 (Exh. FF) and recommended that J███ receive the services a full-time SEIT trained in ABA and home based ABA therapy as well as the related services recommended by Dr. McCarton in her report dated 2/28/05 and 3/9/05. (Exh. KK) Mr. Salsberg noted that J███s interaction skills and her communication deficits are very significant, but she had emerging play skills. (Tr. at 177) He stated that J███ could not succeed in a mainstream setting without a one on one SEIT trained in ABA. (Tr. at 178)

On cross Mr. Salsberg noted that St. Stephen has mainstreamed classes with less than 8 students in each class and that the SEIT could assist J███ in her communication and participation. He opined that the ABA trained SEIT could work with the classroom teacher to help J███ participate in circle time and play time. (Tr. at 179)

Mrs. D., the mother, testified that the rate for IBI is $150 dollars per hour for the services of Lisa Frenette and $120 dollars per hour for J███s shadow, Ms. Fredrickson, who shadows J███ at camp. (Tr. at 181) She stated that she pays $150 for consulting services from IBI or $120 for direct SEIT services from IBI and she submitted cancelled checks. She noted that she worked with Lisa Frenette to put together a comprehensive schedule to cover all the requested services. (Tr. at 182) She stated that J███ received 25 hours of ABA from IBI that includes the shadow at camp and the home services. (Tr. at 183) She stated that the tuition for the mainstream camp from 7/05 through 8/31/05 at First Friends Pre-School was $1642.75 and submitted a check in the amount of $1642.75 (Tr. at 184; Exh. PP) She stated that the tuition and registration and incidental supplies for the St. Stephen of Hungary School, the school they intend to place J███ for the 2005-2006 school year was $5225 (Tr. at 184) and she submitted a check for the St. Stephen of Hungary School in the amount of $4225.00 (Exh. QQ at 2) and she submitted a contract from the St. Stephen of Hungary School. (Exh. RR) Mrs. D. stated that the related services providers are paid by the Dept. of Education; however, she paid for the services of IBI from 3/30/05 through 6/15/05 in the amount of $4845 dollars and submitted cancelled checks totaling $4845 dollars. (Tr. at 188; Exh. RR) The parents requested that J███ requires 50 hours per

Case No. 59148

week of SEIT services in the amount of $120 per hour from IBI from 7/5/05 through 6/30/06 or 22.5 hours of SEIT for at-home ABA therapy and 27.5 hours per SEIT services in the amount of $120 per hour to support █ at camp and at school. The parents also requested 5 hours of supervision per week in amount of 150 per hour. (Tr. at 191)

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The legal standard applicable to a request for reimbursement for educational services, such as in this case, is well established: (1) the services offered by the Dept. of Education are inadequate or inappropriate, (2) the services selected by the parent are appropriate; and (3) equitable considerations support the parent's claim. (School Committee of Burlington v. Department of Education of Massachusetts, 471 U.S. 359 [1985]) The Dept. of Education bears the burden of demonstrating the appropriateness of the program recommended by its CSE. (Matter of Handicapped Child, 22 Ed. Dept. Rep. 487; New York State Review Officer's Decision, Nos. 97-44; 93-9) The Dept. of Education must establish that it appropriately ascertained the child's educational needs and prepared an IEP in accordance with the procedural and substantive requirements of federal and State Regulations. (34 CFR 300.343-346; 8 NYCRR 200.4 and 200.5)

The parents assertion that █s IEP was not prepared in accordance with the procedural and substantive requirements of federal and State regulations was not disputed. Further, under section 614(d)(1)(IV) of the IDEA Amendments of 1997, there is a strong preference for children with disabilities being educated with their non-disabled peers, to the maximum extent appropriate. The IEP must include any explanation of the extent, if any, to which the child will not participate with non-disabled children in the regular class. The IEP did not include an explanation of inclusion with █s non-disabled peers. Based on the foregoing, I find that the Dept. of Education failed to demonstrate the appropriateness of █s program.

The parents have the burden to prove that the services they obtained for █ are appropriate to her needs. The fact that the facility selected by the parents to provide special educational services to the child is not State-approved as a school for children with disabilities is not dispositive of the parent's claim for tuition reimbursement.

Case No. 59148

(Florence County School District Four v. Carter by Carter, 114 S.Ct. 361 [1993])  The
parents must prove that ██ will receive an appropriate educational benefit from the
program at the non-public school, and the parents offered substantial evidence to meet
this burden.    The evidence presented demonstrated that ██s current class at the
mainstreamed camp at First Friends Preschool and her one–to-one ABA trained SEIT
from IBI and speech/language therapy at home where distractions are minimal are
appropriate to meet the child's educational needs. Mr. Salsberg established that ██ is
cognitively capable of functioning with a SEIT with regular education peers at camp and
at school. Ms. Frenette, her ABA therapist and Mr. Blackwell, her 2004-2005 teacher,
both maintained that ██ could succeed at a mainstreamed setting based on her
motivation and language skills.    Further, the parents established that ██ would be
placed in a regular educational classroom in a small school setting of 8 students and this
setting will allow her to have peer modeling and to socialize with typically developing
children.    In accordance with the mandates of IDEA, it is the least restrictive
environment.  (34 CFR 300.550[b]; 8NYCRR 200.6[a][1])  I therefore find that the
parents have met their burden regarding the unilateral placement of ██ at First Friends
Preschool camp for the summer of 2005 and the St. Stephen of Hungary School for 2005-
2006.

       The third prong of the test for tuition reimbursement is whether the equities favor
the parent's position and the Dept. of Education conceding that the parents established
that prong. I also find that the equitable considerations support the parents' claim for
reimbursement.    In this case, the parents fully cooperated with the Department of
Education. Mrs. D. spent time speaking to the teachers as well as other parents, who have
children attending those schools. Further, the Department of Education did not contest
the reasonableness of the parents' request.

ORDER

       Accordingly, it is Ordered that the Dept. of Education shall reimburse the parents
for therapy from IBI from 3/20/05 to 5/31/05 in the amount of $4845. I note the parents
submitted invoices and cancelled checks for Lisa Frenette totaling $4845. (Exh. RR) It is

Case No. 59148

Ordered that the Dept. of Education shall reimburse the parents for the mainstream camp from 7/05 through 8/31/05 at First Friends Pre-School in the amount for $1642.75. I note the parents submitted a cancelled check in the amount of $1642.75 (Exh. PP) It is Ordered that the Department of Education shall reimburse the parents for the St. Stephen of Hungary School, the school they intend to place J█████ for the 2005-2006 school year in the amount of $5225. (Exh. QQ) I note that the parents submitted a check for the St. Stephen of Hungary School (Exh. QQ at 2)

It is Ordered that the Dept. of Education shall advance payment for IBI from 7/5/05 through 6/30/06 for the ABA therapy from IBI for 27.5 hours per week at $120.00 per hour to support J█████ at home and 22.5 hours of SEIT services to support J█████ at camp and at school at $120.00 per hour per week and 5 hours per week of ABA supervision, parent training and clinic team meetings from 9/7/05 through 6/30/06 at $150.00 per hour.

It is Ordered that the Dept. of Education shall provide from 7/5/05 through 6/30/06 the following related services: 5 hours of speech and therapy per week provided by Nicole Raab; 3 sessions of OT for 45 minutes per session per week from a Dept. of Education approved provider and 2 sessions of PT for 45 minutes per session per week from a Dept. of Education approved provider for 7/5/05 through 6/30/06. This case is remanded to CPSE for a substantively and procedurally valid IEP.

Dated: August 3, 2005


LINDA AGOSTON, ESQ.
Impartial Hearing Officer


LA:nn


**PLEASE SEE FOLLOWING PAGE FOR APPEAL NOTICE**

Case No. 59148

---

**PLEASE TAKE NOTICE**

**Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

**"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

**Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.**

Case No. 59148

---

## DOCUMENTATION ENTERED INTO RECORD JUNE 22, 2005

| | | |
|---|---|---|
| A. | Withdrawal Notification, 2/5/04, 1 p. | Parent |
| B. | Meeting Notice for CPSE Review, 5/28/04, 1 p. | Parent |
| C. | IEP, 6/7/04, 19 pp. | Parent |
| D. | A-1 P Letter, 6/7/04, 1 p. | Parent |
| E. | Letter from parent to Region 10, 8/18/04, 1 p. | Parent |
| F. | Psycho-Educational, 1/20/05 and 1/22/05, 5 pp. | Parent |
| G. | OT Report, 2/05, 4 pp. | Parent |
| H. | Teacher Observation/Behavioral Performance Data, 3/1/04, 2 pp. | Parent |
| I. | 12 Month Rationale, 3/1/05, 2 pp. | Parent |
| J. | Teacher Observation/Behavioral Performance Data, 3/1/05,, 6 pp. | Parent |
| K. | Quarterly Educational Progress Report, 3/1/05, 6 pp. | Parent |
| L. | PT Report, 3/2/05, 2 pp. | Parents |
| M. | Letter from Jill Hickey, 3/3/05, 1 pp. | Parents |
| N. | Meeting Notice for CPSE Review, 3/4/05, 1 p. | Parents |
| O. | Letter from Cindi Alfano to Sybil Ewing, 3/7/05, 1 p. | Parents |
| P. | AR-2R - Change from 10 months to 12 months, 3/10/05, 1 p. | Parents |
| Q. | C-8P - Notice of Recommendation, 3/10/05, 1 p. | Parents |

Case No. 59148

| | | |
|---|---|---|
| R. | Letter from parents to Region 10, 3/23/05, 2 pp. | Parents |
| S. | Letter from Lashelle Boviam to Sybil Ewing, 4/11/05, 1 p. | Parents |
| T. | Demand for Due Process, 6/8/05, 3 pp. | Parents |
| U. | Letter from Cindi Alfano to parents, 6/8/05, 1 p. | Parents |
| V. | PT Progress Reports, 6/9/05, 5 pp. | Parents |
| W. | Annual Goals and Short-Term Objectives, undated, 8 pp. | Parents |
| X | Letter from parents to Region 10, undated, 1 p. | Parents |
| Y. | Information Contact Sheet, undated, 6 pp. | Parents |
| Z. | Neurological follow-up visit, 5/26/05, 3 pp. | Parents |
| AA. | Progress Report from Manhattan Center for Early Intervention, 6/03 to 7/03, 17 pp. | Parents |
| BB. | Letter from E. Joseph and Marie R. Briones, 8/17/04, 1 p. | Parents |
| CC. | Letter from parents to Region 9, 1/7/05, 1 p. | Parents |
| DD. | EEG reporting epilepsy, 3/29/05 | Parents |
| EE. | Updated Progress Report by Lisa Frenette, 8 pp. and 6/13/05 4 pp. | Parents |
| FF. | Addendum to Psycho-Educational Evaluation from David Salsberg, Undated, 1 p. | Parents |
| GG. | Report from Greg Blackhall, 3/1/05, 2 pp. | Parents |
| HH. | Progress Report from Nicole Raab, 6/9/05, 3 pp. | Parents |
| II. | Letter from parents to S. Ewing, 3/30/05, 2 pp. | Parents |

Case No. 59148

| JJ. | Fax confirmation, 3/30/05, | Parents |
|-----|----------------------------|---------|
| 1 | CPSE Review letter, 1/7/04, 1 p. | District |
| 2 | IEP Attendance, 1/13/04, 1 p. | District |
| 3 | Meeting Notice for CPSE Review, 5/28/04, 1 p. | District |
| 4 | IEP, 6/7/04, 20 pp. | District |
| 5 | C-7 P, 6/7/04, 1 p. | District |
| 6 | A-1 P, 6/7/04, 1 p. | District |
| 7 | A-1 P, (Home Based Services) 6/7/04, 2 pp. | District |
| 8 | Meeting Notice for CPSE Review, 3/4/05, 1 p. | District |
| 9 | Evaluation, 3/1/05, 6 pp. | District |
| 10 | Psycho-Educational, 1/20/5 and 2/5/05, 5 pp. | District |
| 11 | Speech and Language Evaluation, 3/6/05, 4 pp. | District |
| 12 | OT Report, 3/2/05, 2 pp. | District |
| 13 | PT Report, 3/2/05, 2 pp. | District |
| 14 | 12 Month Rationale, 3/1/05, 2 pp. | District |
| 15 | IEP Goals, 3/10/05, 22 pp. | District |
| 16 | AR-2P Authorization, 3/10/05, 1 p. | District |
| 17 | L-8P Notice of Recommendation, 3/10/05, 1 p. | District |

### DOCUMENTATION ENTERED INTO RECORD JULY 7, 2005

| KK | The McCarton Center Report, 2/2/8/05 and 3/9/05, 12 pp. | Parents |
|----|----------------------------------------------------------|---------|
| LL. | Letter from parents' attorney, 6/23/05, 2 pp. | Parents |

Case No. 59148

| | | |
|------|------|------|
| MM. | Letter from St. Stephen of Hungary School, 7/6/05, 1 p. | Parents |
| NN. | IBI Associates, Fall 2005-2006 Schedule, undated, 1 p. | Parents |
| OO. | IBI Associates Summer 2005 Schedule, undated, 1p. | Parents |
| PP. | Statements from First Friends Preschool, undated, 2 pp. | Parents |
| QQ. | Tuition Agreement and contract from St. Stephen of Hungary School, undated, 2 pp. | Parents |
| RR | Various invoices and cancelled checks to Lisa Frenette, various dates, 6 pp. | Parents |

FINDINGS OF FACT AND DECISION

Case Number:            105457

Student's Name:         J███ D█████████

Date of Birth:          May 16, 2001

District:               3

Hearing Requested By:   Parent

Date of Hearing:        September 5, 2006
                        November 30, 2006
                        January 22, 2007

Hearing Officer:        Debra Siedman DeWan, Esq.

Case No.  105457

_____

NAMES AND TITLES OF PERSONS WHO APPEARED SEPTEMBER 5, 2006

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| Sheila Perris | Chairperson Designee, CSE, District 3 | Department of Education |


NAMES AND TITLES OF PERSONS WHO APPEARED NOVEMBER 30, 2006

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| Sheila Perris | Chairperson Designee, CSE, District 3 | Department of Education |
| Michelle Greenwald (via telephone) | School Psychologist, CSE, Region 10 | Department of Education |


NAMES AND TITLES OF PERSONS WHO APPEARED JANUARY 22, 2007

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| L███ D██████ | Mother | |
| J███ D██████ | Father | |
| Nicole Raab Schwartz | Speech/Language Pathologist | Parent |
| Lisa Frenette (via telephone) | IBI Consultant | Parent |
| David Salsberg (via telephone) | Supervisor of Pediatric Psychology at NYU Medical Center Rusk Institute of Rehabilitation Medicine | Parent |
| Rosalind Jison (via telephone) | Teacher, St. Stephens | Parent |
| Sheila Perris | Chairperson Designee, CSE, District 3 | Department of Education |

Case No.  105457

_____

## INTRODUCTION

An impartial hearing was held before me in the matter of ▉ D. on September 5, 2006, November 30, 2006, and January 22, 2007 at the Impartial Hearing Office, 131 Livingston Street, Brooklyn, New York pursuant to the Individuals with Disabilities Education Improvement Act of 2004 (IDEA).  Lists of the persons who appeared at the hearing and of the documentary evidence that was submitted are both appended to this decision.

When the impartial hearing initially convened on September 5, 2006, Gary Mayerson, Esq., Mayerson & Associates, appeared in person on behalf of ▉ and her parents.  Dr. Sheila Parris, Committee on Special Education (CSE), District 3 (Region 10), appeared in person on behalf of the Board of Education of the City School District of the City of New York.  (Tr. 3)

I was informed that ▉ was born on May 16, 2001.  She had been classified as a preschool student with a disability by the Committee on Preschool Special Education (CPSE).  She attended the St. Stephen of Hungary School (St. Stephen) during the 2005/2006 school year at the expense of the school district, and she was provided with 50 hours of Special Education Itinerant Teacher (SEIT) services (22.5 at school and 27.5 at home), five hours of Applied Behavioral Analysis (ABA) supervision, parent training, and clinic team meetings, speech and language therapy five times per week for 60 minutes, occupational therapy three times per week for 45 minutes, and physical therapy two times per week for 45 minutes on an individual basis pursuant to an order by an Impartial Hearing Officer issued on August 3, 2005.  The CPSE reconvened on March 30, 2006 and developed a new IEP pursuant to this order, which the parties both conceded was the last agreed upon placement for the purposes of determining pendency.  It was recommended that ▉ continue to be classified as a preschool student with a disability and that she continue to receive "50 hours + 5 hours" of SEIT services at IBI Associates and that she be provided with speech and language therapy five times per week for 60 minutes on an individual basis, occupational therapy three times per week for 45 minutes on an individual basis, and physical therapy two times per week for 45 minutes on an

individual basis.  The CSE held a review on May 16, 2006 to develop an IEP for school-age services.  It was recommended that ▮ be classified as having autism, that she be placed in a special class in a community school with a 12:1:1 staffing ratio, and that she be provided with a full-time management paraprofessional on an individual basis, speech and language therapy five times per week for 60 minutes on an individual basis, occupational therapy three times per week for 45 minutes on an individual basis, and physical therapy two times per week on an individual basis.  The CSE reconvened on June 19, 2006 and developed a new IEP.  It was recommended that ▮ be classified as having autism, that she be placed in a general education program, and that she be provided with Special Education Teacher Support Services (SETSS) ten times per week in a group of eight to one, a full-time management paraprofessional on an individual basis, speech and language therapy five times per week for 60 minutes on an individual basis, occupational therapy three times per week for 45 minutes on an individual basis, and physical therapy two times per week on an individual basis.  (Exh.B,C,D,E,1,2,3; Tr. 9/5/06 at 15-19, Tr. 11/30/06 at 44)

Mr. Mayerson requested an impartial hearing on behalf of the parents to challenge the appropriateness of the placement recommended by the CSE for school-age services, and to request that ▮ continue to be provided with services by IBI Associates and with related services for the 2006/2007 school year.    The Impartial Hearing Office received the due process complaint notice on July 24, 2006 and an Impartial Hearing Officer was appointed to hear the matter.  I was appointed to hear the matter on August 29, 2006 upon the recusal of the initial Impartial Hearing Officer.  A motion to schedule was conducted on that same day and the impartial hearing was scheduled for September 5, 2006 at the request of the parents to resolve pendency issues.  (Tr. 9/5/06 at 4-5)

The impartial hearing was held as scheduled, the parties presented their respective positions with respect to that issue, Mr. Mayerson noted that the parents were also requesting to be reimbursed for tuition at St. Stephen for the 2006/2007 school year, and the parties requested that the impartial hearing be adjourned to address the substantive issues.   I found good cause existed to grant the adjournment and that there were

Case No. 105457

compelling reasons to extend the compliance date. Accordingly, the impartial hearing was adjourned to October 5, 2006 and the compliance date was extended by 26 days, from October 7, 2006 to November 2, 2006. (Tr. At 9/5/06 at 23)

An Interim Order on Pendency was issued on September 6, 2006 and an amended one was issued on October 5, 2006. It was ordered that ████ continue to receive 27.5 hours of ABA therapy at home, 22.5 hours of ABA therapy at school, and five hours of ABA supervision, training and clinic by IBI Associates, and that she be provided with speech and language therapy five times per week for 60 minutes on an individual basis, occupational therapy three times per week for 45 minutes on an individual basis, and physical therapy two times per week for 45 minutes on an individual basis.

On October 3, 2006, Mr. Mayerson requested that the impartial hearing be adjourned to October 12, 2006 due to a scheduling conflict. I found good cause existed to grant the adjournment and that there were compelling reasons to extend the compliance date. Accordingly, the impartial hearing was adjourned to October 12, 2006 and the compliance date was extended by an additional 7 days, for a total of 33 days, from November 2, 2006 to November 9, 2006. On October 5, 2006, Mr. Mayerson requested that the impartial hearing be adjourned again because witnesses were not available. I found good cause existed to grant the adjournment and that there were compelling reasons to extend the compliance date. Accordingly, the impartial hearing was adjourned to November 6, 2006 and the compliance date was extended by an additional 25 days, for a total of 58 days, from November 9, 2006 to December 4, 2006. On November 1, 2006, Mr. Mayerson requested that the impartial hearing be adjourned again because he had an appearance in federal court. I found good cause existed to grant the final adjournment and that there were compelling reasons to extend the compliance date. Accordingly, the impartial hearing was November 30, 2006 and the compliance date was extended by an additional 24 days, for a total 82 days, from December 4, 2006 to December 28, 2006. (Tr. 11/30/06 at 30-32)

The impartial hearing reconvened on November 30, 2006. Mr. Mayerson appeared in person on behalf of the parents and Dr. Parris appeared in person on behalf of

Case No. 105457

the school district. The school district presented its case and Mr. Mayerson requested that the impartial hearing be adjourned as the parents were not available due to a death in the family. I found good cause existed to grant the adjournment and that there were compelling reasons to extend the compliance date. Accordingly, the impartial hearing was adjourned to December 28, 2006 and the compliance date was extended by an additional 28 days, for a total of 110 days, from December 28, 2006 to January 25, 2007. (Tr. 11/30/06 at 97-98)

On December 15, 2006, Mr. Mayerson requested that the impartial hearing be adjourned due to the unavailability of witnesses during the school vacation. I found good cause existed to grant the adjournment and that there were compelling reasons to extend the compliance date. Accordingly, the impartial hearing was adjourned to January 22, 2007 and the compliance date was extended by an additional 25 days, for a total of 135 days, from January 25, 2007 to February 19, 2007. On January 17, 2007, Mr. Mayerson requested that the impartial hearing be adjourned due to a scheduling conflict. I found good cause did not exist to grant the adjournment and that there were not compelling reasons to extend the compliance date. Accordingly, the request to adjourn the impartial hearing was denied. (Tr. 1/22/07 at 101)

The impartial hearing reconvened on January 22, 2007. I███ D. and J███ D. appeared in person on behalf of their daughter and they were represented by Mr. Mayerson. Dr. Parris appeared in person on behalf of the school district. The parties completed the presentation of their respective cases and the impartial hearing was concluded. I received the transcript on January 27, 2007 by first class mail and the record was closed.

## POSITION OF THE SCHOOL DISTRICT

Dr. Parris noted that the CSE held a review and developed an IEP on June 19, 2006 to provide school-age services for ███. She explained that the review team concluded that placement in a general education program with a full-time management paraprofessional was the least restrictive environment for ███. The review team included a general education teacher and a special education, both of whom were assigned to the CSE. Dr.

Case No.  105457

Parris did not have information as to what grades the general education teacher was certified to teach or what licenses were held by the special education teacher.  Additionally, there was a school psychologist, who also represented the district, a parent member, a social worker, and ██s parents.  After the CSE review was concluded, a Final Notice of Recommendation (FNR) was issued on June 26, 2006 offering placement at PS149/207. (Exh.1,4; Tr. 11/30/06 at 37-40)

Michelle Greenwald, a school psychologist, participated in the CSE review held on June 19, 2006.  The team reviewed the file, which included evaluations, progress reports from the related service providers, and a school report from the previous school year. However, they did not speak to anyone from the ██s current preschool or any of the SEIT providers, and they did not have a report of a classroom observation to review.  After the team reviewed the reports, they concluded that ██s intellectual ability was in the average range and that her academic skills were in the "pre-K" range.  It was also concluded that ██ had difficulties in language, daily living skills, and socialization.

Dr. Greenwald explained that the CSE changed its previous recommendation that ██ be placed in a special class because the parents felt it was too restrictive and because ██ had been in a general education environment during preschool, she was making progress with the supports in place, and she had the cognitive ability to be in a general education class.  The team also explained to the parents the SETSS provider would work on the same skills with ██, both in and out of the classroom, which she had worked on with the SEIT provider in preschool.  Additionally, the paraprofessional would provide support for ██ while she worked toward achieving the goals that were developed for her.

In developing goals for ██, the team did not think it was necessary to conduct a functional behavior assessment or to develop a behavioral intervention plan because ██s behaviors were not extreme.  While ██ does have some exhibit attentional issues and distractibility, and she needs redirection, this is not really disruptive to the classroom environment.  Dr. Greenwald also noted that there were approximately 25 students in a general education kindergarten class but explained that the team did not discuss the impact of the class size when developing the IEP.  (Exh.1; Tr. 11/30/06 at 53-95)

Case No. 105457

The school district also presented progress reports from the related service providers and from IBI Associates, which provides ⬛ with Incidental Behavioral Intervention services. That report, written in February 2006, noted that while ⬛ had made some progress, she still required intense services to address her global delays. It was reported that ⬛s most severe behavioral issue was her rigidity and that she continued to engage in a great deal of self-stimulatory behavior. In addition, ⬛ was described as having a very limited ability to attend and it requires intense 1:1 ABA in order to address it. It was reported that she could sit for a brief story only with continuous promptings from the therapist. Finally, it was noted that even after a short break from therapy, ⬛ was less organized and exhibited more inappropriate behaviors. It was recommended that ⬛ continue with all the mandated services. (Exh.7)

It was the position of the school district that it offered ⬛ a free appropriate public education. Dr. Parris explained that for a child who reaches school age, there is a natural termination of supports that the child received in preschool in the interest of preparing the child for the increasing demands for greater independence and it is not appropriate to continue to provide SEIT services to a school-age student. When the CSE considered ⬛s cognitive and academic strengths, it was concluded that a general education program was the least restrictive environment for her and that it would be appropriate to provide her with SETSS and a full-time paraprofessional for continuous guidance and close supervision. (Tr. 1/22/07 at 296-298)

**POSITION OF THE PARENTS**

According to Mr. Mayerson, the parents did not contest the CSE's recommendation to classify ⬛ as having autism or to provide her with speech and language therapy, occupational therapy, and physical therapy. However, they disagreed with the placement recommendation and they contended that the school district failed to provide ⬛ with a free appropriate public education for the 2006/2007 school year. Therefore, they were requesting that the school district reimburse them for the tuition they paid to place ⬛ at St. Stephen for that school year and were seeking continued funding for the 55 hours of SEIT services she has been receiving each week. In addition, the

Case No.  105457

_____

parents also requested reimbursement for the costs of ███s placement at First Friends during the summer of 2006.  (Tr. 1/22/07 at 105-106)

███ D. explained that initially ███ attended a self-contained preschool program at the Central Park Early Learning Center during the 2004/2005 school year.  She then began attending St. Stephen during the 2005/2006 school year.  At first, she only attended that school on a part-time basis but during the school year she was able to make the transition to attending on a full-time basis.   Mr. D. reported that ███ has made tremendous progress over these years.  A year ago, he described her being in an enclosed environment and flapping her hands, running in circles, and having trouble being redirected.  Now she is able to answer questions about her day and tell you about things she likes and does not like.

Mr. D. participated in all three CSE reviews held during the spring of 2006.  After the review in May, he wrote a letter to notify the school district that he did not agree with the recommendation for placement.  As a result, he received a notice that a new CSE would reconvene.  He attended that review in June and questioned the recommendations made by the team.  He also visited the site that was offered and spoke to the assistant principal, who told him that the school was not going to have a kindergarten class this school year.  After that, he sent another letter to the school district notifying it of his disagreement with the recommendations.  However, the school district never contacted him again and consequently, an impartial hearing was requested.

According to Mr. D., ███ attends St. Stephen on a full-time basis this year.  She starts at 8:00 AM and finishes at 2:30 PM and she has the support of a SEIT provider during the whole day.  She also receives ABA therapy after school and during the weekend, for a total of approximately 50 hours per week, and she also receives related services of speech and language therapy, occupational therapy, and physical therapy either before or after school as well.  In addition, Mr. and Ms. D. receive parent training and counseling, which helps them deal with ███s behaviors on their own when the therapists are not around in order to maintain consistency with the progress she is making.

Case No.  105457

Mr. D. submitted an enrollment contract from St. Stephen for the 2006/2007 school year; the tuition for this school year is $3,600.00, the registration fee is $100.00, the book and computer fee is $350.00, and the improvement and maintenance fee is $200.00, for a total of $4250.00.  He also explained that the related services are being paid for directly by the school district and that the school district is also paying IBI directly for the 55 hours of SEIT services provided on a weekly basis.  (Exh.A,J,K,N,X; Tr. 1/22/07 at 235-294)

A report, dated June 7, 2006, was submitted from the John T. Wells, M.D, a pediatric neurologist who has followed ██.  Dr. Wells noted that ██ had made excellent progress while attending St. Stephen with a SEIT provider, explaining that her language skills and social interaction increased significantly.  He said he was encouraged by her development and suggested that she continue in the same setting with the supports services intact as much as possible.  (Exh.M)

David Salsberg, Psy.D., Supervisor of Pediatric Psychology at NYU Medical Center Rusk Institute of Rehabilitation Medicine, stated that he first saw ██ in January 2005 and has seen her make the transition from the Central Park Early Learning Center to St. Stephen.  He described her as being of average intelligence and noted that she has made tremendous progress.  He recommended that ██ continue to have the SEIT support in her classroom because she needs someone to give her cues and interject redirection because she has not yet generalized her skills she is working on developing.  A paraprofessional would probably not be able to would be able to provide ██ with the support she needs because her difficulties are not straight forward and she needs more than a tap on her shoulder to do her homework.  He explained that ██s difficulties are pervasive and she requires a special educator with experience in behavioral interventions with language supports.  Dr. Salsberg has observed ██ at St. Stephen and said that it is a small mainstream environment that is nurturing and fosters inclusion.  He did not think ██ could be integrated into a mainstream environment that had 30 students in it.  He also thinks ██ continues to need support services at home because she still presents with pervasive developmental delays and can retreat into herself and back to maladaptive

Case No.  105457

behaviors.   A home-based program provides her with the "carry over" to make appropriate progress.  He explained that he believes that the number of hours of support services that █████ has been receiving are being well tolerated and that she is making progress, noting that she has responded very well to the regimen she has had and that it will aid her in generalization to get ready for next year. (Exh.Y; Tr. 1/22/07 at 192-212)

Lisa Frenette, director of IBI Associates, explained that it was important to teach autistic children in a natural environment in order to help them comprehend, retain, and generalize skills.  In ABA therapy, there are two components: discreet trial teaching and incidental teaching.  After a child's skills levels are analyzed, an individualized program is developed using these approaches.  IBI provided services to █████ during the 2005/2006 school year while she attended St. Stephen, which is a mainstream environment, where she was in a class with ten students, one teacher, and her SEIT.  The typically developing students were good role models.   █████ also attended First Friends, which was a mainstream preschool camp, over the summer of 2006.  This year, █████ continues to attend St. Stephen and is in a class of eight students, one teacher, and her SEIT.

Ms. Frenette described █████s greatest difficulties as her rigidity and her severe fixations, which prevent her from attending to things that go on in school and at home. Therefore, they have to contrive situations to work through her issues.  It is beneficial for █████ to be in a small mainstream class because it is not over-stimulating and she can work on her social, behavior, language, and attentional issues.  In larger situations, it has been difficult for █████ to pay attention.  There are three SEITs who provide services to █████: Ms. Frenette, who has a Masters' degree and is certified in ABA; Ms. Frederickson, who has a graduate degree in special education and is working on being certified in ABA, and Mr. DiStasio, who has a graduate degree in special education and is also working on being certified in ABA.  Ms. Frenette and Ms. Frederickson work with her in school and Ms. Frederickson and Mr. DiStasio work with her at home.  They use prompting and help █████ generalize information to carry it over from school to home.  The communication models at St. Stephen are very good for █████ and that was the main reason that █████ was

Case No.  105457

_____

placed in that environment.  However, ▮ would not be able to survive there without a SEIT to provide her with support as her issues make it hard for her to socialize.

In addition to receiving approximately 32.5 hours of SEIT while she is in school, ▮ also receives about 20 hours at home.  The 20 hours at home include one and a half to two hours a week of parent training and counseling and team meetings twice a month. The home program supports the work being done in school as they "post-teach" and "pre-teach" academic skills and provide ▮ with a seamless transition from school to home. Ms. Frenette described ▮'s progress, explaining that they have been able to completely replace her hand-flapping with words through constant prompting.

The cost of the service is $150 per hour for the five hours a week of direct supervision provided by Ms. Frenette, which includes parent counseling and training, and $120 per hour for the other 50 hours a week.  Ms. Frenette described these rates as being similar to or lower than the rates charged by other providers.  (Exh.G; Tr. 1/22/07 at 126–192)

Rosalind Jison, the classroom teacher at St. Stephen, stated ▮ began in her class in September 2006.  She has a SEIT provider with her in the class and she does need the extra support because she cannot function on her own yet.  While ▮ is making some progress, the real concern is her ability to focus on what is going on in class, which she is able to do most of the time with support.  Sometimes Ms. Jison speaks to the SEIT providers to see what can be done to help ▮ but they do not really sit down to discuss the interventions they use.  In terms of math and reading, ▮ is doing pretty well.  She is on kindergarten level in math and she is on the pre-K to beginning kindergarten level in reading.  Finally, Ms. Jison explained that St. Stephen is a parochial school and the students receive a total of approximately 45 minutes per day of religious instruction.  (Tr. 1/22/07 at 215-235)

Nicole Raab-Schwartz, ▮'s speech and language therapist, noted that she provided her with services five hours per week as mandated by ▮'s IEP, and that she is paid directly by the school district.  She explained that ▮ had already met the goals on

Case No.  105457

the IEP that had been developed for her for this school year, so the goals and objectives were not appropriate.  (Tr. 1/22/07 at 119-124)

## FINDINGS OF FACT AND DECISION

I will not address the recommendations made to classify ▮▮▮ as having autism or to provide her with speech and language therapy, occupational therapy, and physical therapy as related services as they were contested by the parent.  However, the parent has challenged the appropriateness of the placement recommendation and is seeking funding for placement at St. Stephen and for 55 hours of SEIT services per week, as well as reimbursement for the summer program at First Friends

The Individuals with Disabilities Education Improvement Act of 2004 (IDEA), Section 1412 (a)(10)(C) PAYMENT FOR EDUCATION OF CHILDREN ENROLLED IN PRIVATE SCHOOLS WITHOUT CONSENT OF OR REFERRAL BY THE PUBLIC AGENCY provides, in part:

> (i) In general Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.
> (ii) Reimbursement for private school placement If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.
> (iii) Limitations on reimbursement The cost of reimbursement described in clause (ii) may be reduced or denied--
>     (I) if--

Case No.  105457

_____

(aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

(bb) 10 business days (including holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in division (aa);

(II) if, prior to the parents' removal of the child from the public school, the public agency informed the parents, through notice requirements described in section 1415 (b)(7) of this title, of its intent to evaluate the child (including a statement of purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation; or

(III) upon a judicial finding of unreasonableness with respect to actions taken by the parents.

Prior to the amendment of IDEA, the Supreme Court ruled that parents may be reimbursed for tuition payments at a private school if the Board of Education did not offer the student a free appropriate public education, if the placement made by the parents conferred an educational benefit on the student, and if equitable considerations support the parents' claim.  <u>School Committee of Town of Burlington v. Department of Education Massachusetts,</u> 471 U.S. 359 (1985).  In 1993, the Supreme Court decided <u>Florence County School District Four v. Carter by Carter,</u> 114 S.Ct. 361, which extended this ruling to include reimbursement for tuition paid for placement at a private school not approved by the state.

In 2005, the Supreme Court decided <u>Schaffer v. Weast</u> 377 F.3d 449, which held that the burden of persuasion in an administrative hearing challenging an IEP is properly placed upon the party seeking relief, whether that is the disabled child or the school district.  However, in reaching this decision, the Court noted that it was only referring to the "burden of persuasion" (which party loses if the evidence is closely balanced) and not

Case No.  105457

the "burden of production" (which party bears the burden to come forward with the evidence at different points of the proceedings).

Therefore, in consideration of this analysis, I have determined that the parents have sustained their burden to persuade me that the school district did not offer ██ a free appropriate public education for the 2006/2007 school year.  In the first instance, I find that the IEP was procedurally defective because there was no evidence on the record that the general education teacher who participated in the review was certified to teach students on ██'s grade level and there was not evidence on the record that the special education who participate in the review was the teacher was qualified to provide special education in the type of program in which ██ might be placed or may serve as ██'s special education teacher.  Additionally, the IEP was developed without the benefit of a classroom observation and the teachers and other providers who worked with ██ did not participate.  Accordingly, I find that this impeded ██'s right to a free appropriate public education and caused a deprivation of educational benefits as there was no person on the team who was providing ██ with services or who was qualified to provide her with services.

Additionally, I find the IEP was substantively defective as it did not provide for parent counseling and training and there were no goals or objectives to guide the paraprofessional to work with ██ and provide her with the support that she clearly requires.

I also find that the evidence on the record clearly establishes that placing ██ in a general education kindergarten class in a public school, which would have approximately 25 students, would not be appropriate.  ██ was described as having attentional issues as well as social and behavioral issues, and it is clear that this environment is too large and over-stimulating. It is also clear that ██ requires a much greater degree of support by person trained to and experienced in working with autistic children to develop a structured program for her and provide her with a greater degree of intervention than that which a paraprofessional would provide, as well as to provide her with opportunities to generalize what she learns.

Case No.  105457

_____

Finally, no witnesses from the school that the school district offered for placement testified as to how ▮▮▮'s needs could be met in that environment.

Therefore, as I find that the school district did not provide ▮▮▮ with a free appropriate public education, it must be determined whether the parents sustained their burden to establish whether the services that ▮▮▮ is receiving are appropriate and confer educational benefits. A review of the evidence on the record adequately demonstrates that the parents have sustained their burden. It is clear that ▮▮▮ has made tremendous progress since she began attending St. Stephen as she has the benefit of being in a mainstream environment with typically developing children as role models for behavior and communication, while at the same time being in a small nurturing environment that does not offer many distractions. It has also been demonstrated that the SEIT providers have offered her the intervention and support she needs to extinguish inappropriate behaviors and develop her language and social skills in order to progress academically as well as to generalize her comprehension and skill development to a variety of environments. Finally, I find the parents did not sustain their burden to establish that the placement at First Friends over the summer of 2006 conferred educational benefits as there was no direct evidence presented from the camp to establish how ▮▮▮'s needs were met there.

I also find that the parents have sustained their burden to establish that equitable considerations support their request for funding. The evidence on the record establishes that they cooperated with the CSE throughout the process, gave the school district timely notice of their dissatisfaction, and provided the school district with opportunities to amend the offer of placement.

Accordingly, I will order the school district to reimburse the parents for the tuition they paid to St. Stephen for the 2006/2007 school year in the amount of $4250, but that that amount should be proportionately reduced so as not to reimburse the parents for the time spent on religious studies. Since the evidence on the record establishes that the school day, which runs from 8:00 AM to 2:30 PM is six and a half hours long, and religious instruction is provided for 45 minutes per day, which is 11.5% of the school

Case No.  105457

day, I find the reimbursement should be reduced by 11.5%, or $488.75, thereby reducing the reimbursement to $3761.25.  I will also order the school district to continue to fund 55 hours of SEIT services through IBI as follows: 50 hours at home and school per week not to exceed $120 per hour and 5 hours of supervision, training, and counseling per week not to exceed $150 per hour, for a total cost not to exceed $6750 per week.

I will also order the school district to continue to provide all the related services mandated on the IEP, including, but not limited to, the speech and language therapy provided by Ms. Raab-Schwartz.

Finally, I will order that this matter be remanded to the CSE to update assessments and develop a new IEP and that the IEP contain a transition plan for ▮▮▮.

**ORDER**

It is ordered that:

1) The school district reimburse the parents for tuition in an amount not to exceed $3761.25 immediately upon presentation of proof of payment in accordance with decision;

2) The school district continue to fund a 50 hours of SEIT services per week through IBI Associates in an amount not to exceed $6000 per week and 5 hours of SEIT services through IBI Associates in an amount not to exceed $750 per week in accordance with this decision;

3) The school district provide all related services mandated by the IEP in accordance with this decision; and

4) This matter be remanded to the CSE for a new review in accordance with this decision

Dated: February 5, 2007

*Debra Siedman DeWan, Esq.*
DEBRA SIEDMAN DEWAN, ESQ.
Impartial Hearing Officer

DS:nn

Case No.  105457

---

**PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Case No.  105457

## DOCUMENTATION ENTERED INTO RECORD SEPTEMBER 5, 2006

| A. | Request for Impartial Hearing, 7/21/06, 4 pp. | Parent |
| B. | Hearing Officer's Decision and Order, 8/3/05, 19 pp. | Parent |
| C. | IEP, 5/16/06, 15 pp. | Parent |
| D. | Disclosure Letter, 8/29/06, 2 pp. | Parent |
| E. | IEP, 3/30/06, 11 pp. | Parent |

## DOCUMENTATION ENTERED INTO RECORD NOVEMBER 30, 2006

| 1. | IEP/CSE, 6/19/06, 14 pp. | Department of Education |
| 2. | IEP/CSE, 5/16/06, 15 pp. | Department of Education |
| 3. | IEP/CPSE, 3/30/06, 11 pp. | Department of Education |
| 4. | Final Notice of Recommendation, 6/26/06, 1 p. | Department of Education |
| 5. | Parents' 20-day Notice Letter to Marilyn Sprecher, 6/6/06, 1 p. | Department of Education |
| 6. | Parents' Letter to marlin Sprecher, 6/30/06, 2 pp. | Department of Education |
| 7. | Progress Report – Incidental Behavior Intervention, 2/1/06, 6 pp. | Department of Education |
| 8. | Related Service Student Progress Report, OT, 1/31/06, 1 p. | Department of Education |
| 9. | Annual Progress Report, 1/30/06, 4 pp. | Department of Education |
| 10. | Related Service Student Progress Report, PT, 1/17/06, 1 p. | Department of Education |
| 11. | Physical Therapy Progress Report, 6/9/05, 2 pp. | Department of Education |

Case No.  105457

| 12. | The McCarton Center Evaluation, 2/28/05 & 3/9/05, 12 pp. | Department of Education |
| 13. | Speech & Language Progress Report, 3/6/05, 4 pp. | Department of Education |
| 14. | Occupational Therapy Report, 3/05, 2 pp. | Department of Education |
| 15. | Progress Report – Greg Blackhall, 3/1/05, 6 pp. | Department of Education |
| 16. | Psychoeducational Evaluation, 1/20/05 & 2/5/05, 5 pp. | Department of Education |
| 17. | Behavioral Observation – IBI, 1/5/05, 8 pp. | Department of Education |

## DOCUMENTATION ENTERED INTO RECORD JANUARY 22, 2007

| A. | Demand of Due Process, 7/21/06, 4 pp. | Parent |
| B. | Findings of Fact and Decision by IHO Linda Agoston, 8/3/05, 19 pp. | Parent |
| C. | New York City Board of Education – IEP, 5/16/06, 15 pp. | Parent |
| D. | New York City Board of Education – IEP, 3/30/06, 11 pp. | Parent |
| E. | New York City Board of Education – IEP, 6/19/06, 3 pp. | Parent |
| G. | Progress Report IBI Associates, by Lisa Frenette, M.S., E.D., 9/22/06, 7 pp. | Parent |
| H. | Withdrawn | |
| I. | First Friends Pre-School Welcome Letter, Schedule and Proof of Payment, 6/7 – 8/4/06, 67 pp. | Parent |
| J. | Letter from Parents to CSE Chairperson Marilyn Sprecher, 6/30/06, 2 pp. | Parent |

Case No.  105457

_____

K.      C-10 Final Notice of Recommendation Change of    Parent
        Program/Service Category, 6/26/06, 1 p.

L.      M-5 Notice of Committee on Special Education    Parent
        Review Meeting, 6/12/06, 1 p.

M.      Clinical Summary By: John T.Wells, M.D., 6/7/06,    Parent
        1 p.

N.      Letter from Parents to CSE Chairperson Marilyn    Parent
        Sprecher, 6/6/06, 1 p.

O.      C-10 Final Notice of Recommendation Change of    Parent
        Program/Service Category, 5/23/06, 1 p.

P.      M-5 Notice of Committee on Special Education    Parent
        Review Meeting From Chairperson Marilyn
        Sprecher, 5/6/06, 1 p.

Q.      C-8p Notice of Recommendation Modification/No    Parent
        Change (CPSE), 3/30/06, 1 p.

R.      AR-1P BOE Approval and Authorization of the    Parent
        IEP, 3/30/06, 1 p.

S.      Progress Report, IBI Associates by: Lisa Frenette,    Parent
        M.S., E.d, 2/1/06, 6 pp.

T.      Annual Progress Report By: Nicole Raab, M.S.,    Parent
        CCC-SLP, 1/30/06, 6 pp.

U.      C-2 Consent for Re-evaluation/Triennial    Parent
        Evaluation, 12/23/05, 4 pp.

V.      Related Service Student Progress Report By: Lisa    Parent
        A. Leshner, MSPT, PC, 10/6/05, 7 pp.

W.      Medical Record, 2 pp.    Parent

X.      St. Stephen of Hungary School, 2006-2007, 3 pp.    Parent

Case No.   105457

---

| Y. | Psychoeducational Update By David H. Salsberg, Psy. D., DABPS, 10/6 &27/06, 2 pp. | Parent |
| Z. | Progress Report, 11/17/06, 1 p. | Parent |
| AA. | AR1P Board of Education Approval and Authorization of the IEP, no change, 3/30/06, 1 p. | Parent |
| BB. | C-8P, 3/30/06, 1 p. | Parent |